UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
VICTORIA SCHWEITZER, individually, and as
next friend pursuant to Fed. R. Civ. P. 17(c) for
infant plaintiff JORDANNA SCHWEITZER,

                                Plaintiffs**,**         **MEMORANDUM AND ORDER**
                                                        08-CV-135 (DRH) (ETB)

     v.

LISA CROFTON, personally, DARLENE GELIN,
personally, SUFFOLK COUNTY DEPARTMENT
OF SOCIAL SERVICES, and STONY BROOK
UNIVERSITY MEDICAL CENTER,

                                Defendants.
-----------------------------------------------------------------X
**APPEARANCES:**

**For the Plaintiffs:**
**William M. Brooks, Esq.**
Mental Disability Law Clinic
Touro College
Jacob D. Fuchsberg Law Center
225 Eastview Drive
Central Islip, New York 11722

**For Defendants Darlene Gelin and Stony Brook University Medical Center:**
**Andrew M. Cuomo**
Attorney General of the State of New York
300 Motor Parkway - Suite 205
Hauppauge, New York 11788
By: Patricia M. Hingerton, Esq.

**For Defendants Lisa Crofton and the Suffolk County Department of Social Services:**
**Christine Malafi**
Suffolk County Attorney
H. Lee Denison Building
100 Veterans Memorial Highway
P.O. Box 6100
Hauppauge, New York 11788
By: Christopher M. Gatto, Assistant County Attorney

**HURLEY, Senior District Judge**:

Plaintiff Victoria Schweitzer ("Victoria") filed the present action individually, and on behalf of her infant daughter Jordanna Schweitzer ("Jordanna") (collectively, "Plaintiffs"), against defendants Lisa Crofton ("Crofton"), Darlene Gelin ("Gelin"), Suffolk County Department of Social Services ("County DSS"), and Stony Brook University Medical Center ("SBUMC") (collectively, "Defendants"). Victoria alleges that twelve days after she gave birth to Jordanna at SBUMC, County DSS workers temporarily removed Jordanna from her custody without a prior court order and absent probable cause based upon her history of mental illness. Presently pending before the Court are the following three motions to dismiss: (1) a motion by Gelin and SBUMC (the "State Defendants") to dismiss the Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) and Rule 12(b)(6); (2) a motion by Crofton and County DSS (the "County Defendants") to dismiss the Complaint in part pursuant to Rules 12(b)(2) and (6); and (3) a separate motion by Crofton to dismiss the Complaint pursuant to Rule 4(m). For the reasons stated below, the motion by the State Defendants is granted; the motion by the County Defendants is denied in part and granted in part; and the motion by Crofton is denied.

## BACKGROUND

### I. *Factual Background*

The following summary of facts is taken from the Complaint.

In the Spring of 2005, Victoria suffered from bi-polar disorder and took prescription medication, namely Zyprexa and lithium, to stabilize her condition. She became pregnant and on April 26, 2005, was admitted to SBUMC due to complications with her pregnancy and high blood pressure. Victoria remained hospitalized and on May 16, 2005, gave

birth to Jordanna who was born with elevated levels of lithium and neurological problems due to the lithium. Jordanna was placed in the Neo-Natal Intensive Care Unit ("NICU") where she remained for the length of her stay at SBUMC.

While at SBUMC, Victoria expressed "displeasure" in responding to numerous staff inquiries regarding her fitness to parent because she had a history of mental illness, which the staff interpreted as "agitation." (Compl. ¶ 34.) In addition, on two occasions, Victoria became alarmed and cried while holding Jordanna. The staff at SBUMC interpreted her crying as "symptomatic and stereotyped it as mental illness due to her history when, in fact, Victoria's behavior was merely an emotional reaction to new motherhood and concern over the child who was ill at birth." (*Id.* ¶ 51.)

The day after Jordanna was born, Gelin, a social worker and employee at SBUMC, visited Victoria and asked to speak to her parents about Victoria's ability to parent. Gelin later informed County DSS and Crofton, a County DSS caseworker, about her "concerns regarding [Victoria's] mental illness and her ability to care for Jordanna." (*Id.* ¶ 45.) Gelin "recommended that [County DSS] take steps to prevent [Victoria] from maintaining the custody and care of Jordanna." (*Id.* ¶ 46.)

Thereafter, Victoria was discharged from SBUMC and Jordanna remained hospitalized in NICU. On May 26, 2005, Crofton conducted an assessment of safety issues at Victoria's home to determine whether she could properly care for Jordanna. Following this assessment and absent a court order, on May 28, 2008, County DSS emergency service workers removed Jordanna from Victoria's custody pursuant to § 1024 of the New York Family Court Act by removing Jordanna from NICU and placing her in a foster home. Notice of the removal

was delivered to Victoria's home that same day; Victoria refused to sign or consent to the removal.

On May 31, 2005, County DSS filed a neglect petition under New York Family Court Act, Article 10. On June 2, 2005, the Suffolk County Family Court held a hearing and ruled that the emergency removal of Jordanna was warranted. At this time, and allegedly under duress, Victoria consented to the temporary removal of Jordanna. Victoria feared that if she contested the removal, the process would be prolonged and her rights frustrated. Victoria's parents were awarded temporary custody of Jordanna and Victoria was granted supervised visitation.

On October 20, 2005, the Family Court ordered the petition adjourned in contemplation of dismissal and ordered further monitoring by County DSS pending a final custody determination. Victoria was awarded unsupervised visitation with Jordanna.

On June 6, 2006, the Family Court awarded joint custody to Victoria and her parents. The residential custody of Jordanna was awarded to Victoria's parents and Victoria was awarded unlimited and unsupervised visitation rights.

## II. *Claims Asserted in the Complaint*

On January 10, 2008, Plaintiffs filed the instant Complaint seeking compensatory and punitive damages, attorneys' fees, and costs. The Complaint names Gelin and Crofton personally, County DSS, and SBUMC, and asserts the following ten causes of action: (1) defendants Gelin and Crofton entered into a civil conspiracy to violate the civil rights of Victoria and Jordanna pursuant to 42 U.S.C. § 1983 ("Section 1983"); (2) defendant Crofton violated Jordanna's rights against unreasonable seizures under the Fourth Amendment and

Section 1983; (3) an unnamed defendant violated Victoria's procedural due process rights under the Fourteenth Amendment and Section 1983 by removing Jordanna without a hearing and in the absence of probable cause to believe that Jordanna faced imminent danger; (4) defendant Crofton violated Victoria's and Jordanna's substantive due process rights under the Fourteenth Amendment and Section 1983; (5) (6) and (7) defendant County DSS violated Plaintiffs' substantive due process rights, Plaintiffs' procedural due process rights, and Jordanna's Fourth Amendment rights[1]; (8) defendants County DSS and SBUMC violated Victoria's rights under Title II of the Americans with Disabilities Act ("ADA") by judging Victoria's fitness to care for Jordanna based on "stereotypic views of individuals with mental illness" (Compl. ¶ 99); (9) defendants County DSS and SBUMC violated § 504 of the Rehabilitation Act, 29 U.S.C. § 794, by judging Victoria's fitness to care for Jordanna based on "stereotypic views of individuals who suffer from mental illness" (*Id.* ¶ 101); and (10) defendants County DSS, Gelin, and Crofton engaged in a civil conspiracy to violate Victoria's civil rights under state law.

III.     *The Present Motions*

Before the Court are three motions. First, the State Defendants move to dismiss all claims asserted against them in their entirety, viz. the first, eighth, ninth, and tenth causes of action. Next, the County Defendants move to dismiss all claims asserted against Crofton based upon lack of service as well as the tenth cause of action in its entirety. Finally, Crofton has filed a separate motion seeking to dismiss all claims asserted against her based upon insufficient

---

[1]  The fifth, sixth and seventh causes of action are grouped together under one heading in the Complaint.  (Compl. ¶¶ 96-97.)

service.[2]  For the reasons stated below, the State Defendants' motion is granted; the County

Defendants' motion is granted to the extent that the tenth cause of action is dismissed; and

Crofton's motion is denied.

## *DISCUSSION*

**I.**      ***Motion to Dismiss: Legal Standards***

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the

claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Supreme Court

has recently clarified the pleading standard applicable in evaluating a motion to dismiss under

Rule 12(b)(6).

First, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Court disavowed

the well-known statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that "a complaint

should not be dismissed for failure to state a claim unless it appears beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  550

U.S. at 562.   Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege

"only enough facts to state a claim to relief that is plausible on its face."  *Id*. at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss
> does not need detailed factual allegations, a plaintiff's obligation to
> provide the grounds of his entitlement to relief requires more than
> labels and conclusions, and a formulaic recitation of the elements
> of a cause of action will not do.  Factual allegations must be
> enough to raise a right to relief above the speculative level, on the
> assumption that all the allegations in the complaint are true (even
> if doubtful in fact).

---

[2]  As will be described *infra* in more detail, the County Defendants filed a motion to
dismiss all claims against Crofton for lack of service.  Thereafter, Plaintiffs attempted to
effectuate service upon Crofton.  Crofton later filed a separate motion contesting the validity of
this belated service.

*Id.* at 555 (citations and internal quotation marks omitted).

More recently, in *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937 (2009), the Supreme Court provided further guidance, setting forth a two-pronged approach for courts deciding a motion to dismiss. First, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual assumptions." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555)).

Second, "[w]hen there are well-pleaded factual allegations a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* at 1949 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

## II.     *The County Defendants' Motions to Dismiss*

The County Defendants move to dismiss the Complaint as against Crofton for lack of jurisdiction based upon a failure to serve. They also move to dismiss the tenth cause of action as against the County Defendants, a claim for civil conspiracy under New York law, based upon Plaintiffs' failure to file a Notice of Claim pursuant to § 50-e of the New York General

Municipal Law.  *See, e.g.*, *Poux v. County of Suffolk*, No. 09 CV 3081, 2010 WL 1849279, at

*12 (E.D.N.Y. May 4, 2010) ("Under New York law, service of a notice of claim upon a

municipality, including a county, is a condition precedent to maintaining a tort action against the

municipality or any of its officers, agents or employees acting within the scope of their

employment.") (citing  N.Y. Gen. Mun. L. §§ 50-e and 50-i(1); N.Y. County Law § 52).

Plaintiffs concede that they failed to serve a Notice of Claim on the County Defendants and

therefore agree that this claim should be dismissed as against the County Defendants.  (Decl. of

William M. Brooks ¶ 13, Dec. 19, 2008 ("Dec. 19, 2008 Brooks Decl.").)  Accordingly, the tenth

cause of action is dismissed as against the County Defendants.  The Court now turns to the issue

of service.

A.    ***The County Defendants' Motions to Dismiss
      as to Crofton Based Upon Lack of Service***

Rule 4(m) establishes a 120-day deadline for a plaintiff to serve defendants with

process after filing a complaint.  Fed. R. Civ. P. 4(m).  Here, as set forth in greater detail below,

it is undisputed that Plaintiffs did not serve Crofton within 120 days of filing the Complaint.

Nonetheless, Plaintiffs argue that Crofton's claims should not be dismissed because:  (1) Crofton

waived the defense of insufficient process; (2) the period of time for Plaintiffs to serve Crofton

was tolled pending this Court's decision on Plaintiffs' request to proceed *in forma pauperis*;

(3) Crofton received actual and/or constructive notice of this lawsuit; and (4) good cause and/or

equitable factors warrant excusing Plaintiffs' failure to serve.  For the reasons that follow, the

Court finds that Crofton did not waive the defense of insufficient service.  However, because the

Court finds that Plaintiffs are entitled to a discretionary extension of time to effectuate service

under Rule 4(m), the Court need not, and does not, resolve the other issues.  Therefore, the County Defendants' motions to dismiss as to Crofton based upon insufficient service are denied.

### 1.    *Background*

Plaintiffs, who are represented by the Mental Disability Law Clinic at Touro College Jacob D. Fuchsberg Law Center, commenced this action by filing a Summons and Complaint on January 10, 2008.  That same day, Plaintiffs also filed a Request to Proceed *In Forma Pauperis*.

On March 26, 2008, County DSS was served via delivery of the Summons and Complaint to the office of the County DSS at the "Mary Gordon Building."  County DSS has not contested service.

According to Plaintiffs' attorney, his office retained a process server to serve all four defendants.  (Dec. 19, 2008 Brooks Decl. ¶ 8.)  At some point, it became apparent to counsel that the process server "may not have been the most reliable" and may have failed to serve a defendant in another lawsuit for which counsel retained him to serve process.  (*Id.* ¶ 10.)  Accordingly, counsel "made a mental note to see if the defendants' initial submission indicated that there may be a problem with service."  (*Id.*)

On April 21, 2008, the Suffolk County Attorney filed a Notice of Appearance on behalf of defendants Crofton and County DSS.  The Suffolk County Attorney also filed a pre-motion conference letter setting forth the basis for the County Defendants' motion to dismiss.  (ECF No. 8.)  The State Defendants similarly filed a pre-motion conference letter that same day.  (ECF No. 5.)  At the time these letters were filed, the case was assigned to United States District Court Judge Leonard D. Wexler.  The letters were filed pursuant to Judge Wexler's Individual

Practice Rules which require a letter request for a pre-motion conference, setting for the basis of the anticipated motion, precede the filing of any motion to dismiss. None of the defendants asserted lack of service as a ground for the anticipated motions. According to Plaintiffs' counsel, "[b]ecause the defendants did not assert that the plaintiff had not effectuated sufficient service, [he] believed that service had been effective on all defendants." (Dec. 19, 2008 Brooks Decl. ¶ 11.) On June 4, 2008, this case was reassigned to United States District Court Judge Joseph F. Bianco and, on July 28, 2010, this action was reassigned once again to the undersigned.

By Order dated October 10, 2008, the Court established a briefing schedule for the proposed motions to dismiss. By Order dated December 5, 2008, the Court then granted Plaintiffs' request to proceed *in forma pauperis*, finding that Victoria's financial status qualified her to commence this action without the prepayment of filing fees pursuant to 28 U.S.C. § 1915(a)(1). On December 19, 2008, Plaintiffs' counsel wrote to the United States Marshall for the Eastern District of New York and requested that the Marshall effectuate service on defendant Crofton. There is no indication in the record that the Marshall ever effectuated service or that Plaintiffs pursued the matter.

The Defendants' motions to dismiss were filed in December 2008 and January 2009. In the County Defendants' motion to dismiss, they asserted for the first time that the Complaint should be dismissed as against Crofton because she had never been served.

After being served with the County Defendants' motion, Plaintiffs' counsel spoke to his process server, who assured him that he effectuated service on Crofton and that he would forward proof of service. Counsel never received proof of service. In early December 2008,

counsel asked a law student intern to go to the process server's place of business to retrieve the proof of service. As detailed in the intern's affidavit, she made numerous attempts to retrieve proof of service, all to no avail. (Aff. of Annemarie Grattan, Oct. 9, 2009.)

Subsequent to the filing of the motions to dismiss, on February 18, 2009, Plaintiffs filed two declarations of service indicating that Crofton had been served by: (1) delivering the Complaint to Crofton's place of business on January 27, 2009; and (2) mailing the summons and Complaint to Crofton on February 9, 2009. The declarations of service were filed by the law school intern and Plaintiffs' counsel, respectively. Plaintiffs' counsel explained that "[i]n opposing the motion by defendants Crofton and [County] DSS, [he] learned that case law existed that held that when a court grants an *in forma pauperis* motion, the 120 day period for service pursuant to Fed. R. Civ. P. 4(m) begins to run from the time of the granting of the motion." (Decl. of William M. Brooks ¶ 9, Oct. 2009 ("Oct. 2009 Brooks Decl.").) Therefore, he "believed that time still existed to serve defendant Crofton without making any application to this court." (*Id.*)

Thereafter, Crofton submitted a letter request for a pre-motion conference to file a second motion to dismiss the Complaint on the ground that Plaintiffs' most recent attempts at service were invalid. A briefing schedule was set and the Court indicated that it would address all of the pending motions once the new motion to dismiss had been filed. Crofton's new motion was filed on October 23, 2009.

### 2. *The County Defendants Did Not Waive the Defense of Insufficient Service*

Rule 12(h)(1)(B) provides that a party waives any defense listed in Rule 12(b)(2)-(5), including insufficient service of process, by failing to either:

(i) make it by motion under this rule; or

(ii) include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course.

Fed. R. Civ. P. 12(h)(1)(B).

It is undisputed that the County Defendants raised insufficient service in their first motion to dismiss. Nonetheless, Plaintiffs argue that because the County Attorney filed a Notice of Appearance on behalf of Crofton and failed to raise the defense of lack of service in her pre-motion conference letter, which preceded the filing of her motion papers, Crofton waived the defense of lack of service. The Court disagrees.

In support of their argument, Plaintiffs cite *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724 (2d Cir. 1998) for the proposition that "Rule 12(h)(1) 'advises a litigant to exercise great diligence in challenging personal jurisdiction . . . or service of process. If he wishes to raise [either] of these defenses he must do so at the time he makes his first significant defensive move . . . ." *Id.* at 730 (quoting 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1391 (1990)). Because the County Defendants failed to raise insufficient service in their "first significant defensive move," viz. their pre-motion conference letter, Plaintiffs assert that this defense has been waived.

In *Transaero*, the Second Circuit quoted only a portion of the statement set forth in Wright & Miller. The full statement reads as follows:

> [T]he message conveyed by the present version of Rule 12(h)(1)
> seems quite clear. It advises a litigant to exercise great diligence
> in challenging personal jurisdiction, venue, or service of process.
> If that party wishes to raise any of these defenses, that must be
> done at the time the first significant defensive move is
> made—*whether it be by way of a Rule 12 motion or a responsive
> pleading*.

5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1391 (3d ed.

2004) (emphasis added). This is consistent with Rule 12(h), which as noted above, provides that

a defense of insufficient process is waived if not made "by motion under this rule." Fed. R. Civ.

P. 12(h)(1)(B). Plaintiffs proffer no authority, and the Court has been unable to find any, for the

proposition that a pre-motion conference letter, a mechanism provided for in a judge's Individual

Practice Rules, constitutes a "motion" under Rule 12 such that a failure to raise a defense in such

a letter results in a waiver of that defense.

Moreover, Plaintiffs' citation to *Transaero* is inapposite to the present facts. In

*Transaero*, the Circuit found that the defendant had not waived the defense of insufficient

process by merely asserting the defense in a footnote in its first responsive motion and

"volunt[eering] . . . to litigate the merits of the case." 162 F.3d at 730 ("Under the liberal

pleading rules of Rule 8, a party need only state these defenses in its first responsive filing and is

not required to 'articulate [ ] [them] with any rigorous degree of specificity.'") (quoting *Kulzer v.

Pittsburgh-Corning Corp.*, 942 F.2d 122, 125 (2d Cir. 1991). *Transaero*, then, does not support

Plaintiffs' position that the defense of insufficient service may be waived if not raised for the

first time in a pre-motion conference letter.

Accordingly, because the County Defendants did raise insufficient process in

their Rule 12 motion, the Court finds that they have not waived this defense.

### 3.    *A Discretionary Extension of Plaintiffs'*
####      *Time to Serve is Warranted Under Rule 4(m)*

**(a)    *Rule 4(m)***

Rule 4(m) provides, in pertinent part, as follows:

> If a defendant is not served within 120 days after the complaint is
> filed, the court--on motion or on its own after notice to the
> plaintiff--must dismiss the action without prejudice against that
> defendant or order that service be made within a specified time.
> But if the plaintiff shows good cause for the failure, the court must
> extend the time for service for an appropriate period. . . .

Fed. R. Civ. P. 4(m).  Pursuant to this rule, a court must grant additional time to complete service

if the plaintiff demonstrates good cause for failing to serve the defendant within the 120-day

period.  *Id.  See also Zapata v. City of N.Y.*, 502 F.3d 192, 197 (2d Cir. 2007) ("It is clear under

the second clause of Rule 4(m) that an extension is always warranted upon a showing of 'good

cause,' because the rule commands that an 'appropriate' extension 'shall' be granted upon such a

showing.").  "In determining whether a plaintiff has shown good cause, courts weigh the

plaintiff's reasonable efforts and diligence against the prejudice to the defendant resulting from

the delay."  *DeLuca v. AccessIT Group, Inc.*, 695 F. Supp. 2d 54, 66 (S.D.N.Y. 2010).

Furthermore, it is within the discretion of the district court to extend this deadline

even if there is no good cause shown.  *See Zapata*, 502 F.3d at 197 ("The first clause of Rule

4(m), which makes no mention of good cause, grants discretion to district courts in a backhanded

fashion by dictating that they 'shall' take a certain action once 120 days have passed without

service: they must decide to dismiss . . . or decide not to dismiss.").  *See also Henderson v.

United States*, 517 U.S. 654, 662 (1996) ("Most recently, in 1993 amendments to the Rules,

courts have been accorded discretion to enlarge the 120-day period 'even if there is no good

cause shown.'") (quoting Fed. R. Civ. P. Advisory Committee's Notes at 654). In determining

whether a discretionary extension is appropriate in the absence of good cause, courts consider

the following four factors:

> (1) whether the applicable statute of limitations would bar the
> refiled action; (2) whether the defendant had actual notice of the
> claims asserted in the complaint; (3) whether the defendant had
> attempted to conceal the defect in service; and (4) whether the
> defendant would be prejudiced by the granting of plaintiff's request
> for relief from the provision.

*Beauvoir v. U.S. Secret Serv.*, 234 F.R.D. 55, 58 (E.D.N.Y. 2006). *See also DeLuca*, 695 F.

Supp. 2d at 66.

### (b) *Whether Plaintiffs Have Established Good Cause for an Extension*

Plaintiffs' counsel contends that good cause existed for his failure to serve

Crofton within 120 days of the filing of the Complaint. "Good cause or excusable neglect is

generally found only in exceptional circumstances where plaintiff's failure to serve process in a

timely manner was the result of circumstances beyond his control." *McKibben v. Credit

Lyonnais*, No. 98 Civ. 3358, 1999 WL 604883, at *3 (S.D.N.Y. Aug. 10, 1999). *See also

Zapata*, 502 F.3d at 198 ("[T]he plaintiff must ordinarily advance some colorable excuse for

neglect."). Here, Plaintiffs' counsel argues that he acted diligently in believing that all

defendants had been served because he received assurances from his process server that they

were served and none of the defendants raised insufficient service in their pre-motion conference

letters. Counsel's "misplaced reliance" on his admittedly unreliable process server who never

forwarded proof of service is insufficient to establish good cause. *See Beauvoir*, 234 F.R.D. at

56 ("[I]t is trial counsel's responsibility to monitor the activity of the process server and to take

reasonable steps to assure that a defendant is timely served.") (internal quotation marks and citations omitted).

Plaintiffs' counsel also maintains that he acted diligently because in opposing the first motion to dismiss filed by the County Defendants based upon lack of service upon Crofton, he learned that "[c]ase law supports the contention that the 120 [day] period to serve runs from the issuance of an *in forma pauperis* order." (Pls.' Mem. of Law in Opp'n 7, Oct. 9, 2009.) Relying on this authority, counsel believed that "time still existed to serve defendant Crofton without making any application to this Court." (Oct. 2009 Brooks Decl. ¶ 9.) On December 5, 2008, Plaintiffs' *in forma pauperis* application was granted. Crofton was served by Plaintiffs' counsel less than 120 days later in January and February 2009.

Plaintiffs are correct that there is authority for the proposition that the time to effectuate service is tolled during the pendency of a plaintiff's application to proceed *in forma pauperis* if the application is granted. *See, e.g.*, *Gonzalez v. L'Oreal USA, Inc.*, 489 F. Supp. 2d 181, 184 (N.D.N.Y. 2007) ("Because Plaintiff successfully applied to proceed *in forma pauperis*, the 120 day period is tolled while the *in forma pauperis* application is pending."); *Kavanzanjian v. Rice*, No. 03-CV-1923, 2005 WL 1377946, at *2 (E.D.N.Y. June 6, 2005) ("[T]he time to effect service should be tolled while an *in forma pauperis* motion is pending-at least where, as here, the motion is granted."). This is because "[f]or plaintiffs proceeding *in forma pauperis* . . . the Marshal's Office-not the plaintiff-is primarily responsible for effecting service [once the application is granted]." *Kavazanjian*, 2005 WL 1377946, at *2 (citing 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in such cases."). *See also* Fed. R. Civ. P. 4(c)(3) ("At the plaintiff's request, the court may order that

service be made by a United States marshal or deputy marshal or by a person specially appointed by the court.  The court must so order if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915 . . . .").  "[T]he purpose of having the marshal do the serving is to recognize the economic status of the plaintiff and spare the expense of a private process server." *Id.* Practice Commentary C4-14.

In the instant case, Plaintiffs' counsel, however, did not learn of the potential for tolling until after the 120-day time to serve had expired.  Thus, counsel's belated understanding does not support the position that he acted diligently within the 120-day period in effectuating service within the statutory time frame.

Nonetheless, the question remains, even though Plaintiffs did not act diligently within the 120-day period, whether Plaintiffs' time to effectuate service was tolled during the pendency of Plaintiffs' *in forma pauperis* application.  Defendants contend that the cases cited by Plaintiffs are inapplicable because they all involved pro se litigants while here, Plaintiffs are represented by counsel, albeit a law school clinic.  Moreover, Plaintiffs themselves indicate that they may have waived the extended service period provided to *in forma pauperis* plaintiffs by serving Defendants themselves rather than having the Marshal effectuate service.  (Pls.' Mem. of Law in Opp'n 8 n.2, Oct. 9, 2009.)  The Court need not resolve these issues, however, because as discussed below, it finds that even if the time to effectuate service was not tolled, and even if Plaintiffs failed to demonstrate good cause for their failure to serve, a discretionary extension under Rule 4(m) is warranted.

<b>(c)</b>     <b><i>Even Absent Good Cause, a<br>Discretionary Extension is Warranted</i></b>

Even assuming arguendo that Plaintiffs did not establish good cause for their failure to timely serve Crofton, the Court would exercise its discretion to permit Plaintiffs additional time to effectuate service. The first two factors, i.e., whether the applicable statute of limitations would bar the refiled action and whether the defendant had actual notice of the claims asserted in the complaint, and the fourth factor, viz. whether the defendant would be prejudiced by an extension, all weigh in favor of granting an extension to serve. Because the last claim against Crofton occurred in May 2005 and Plaintiffs' Section 1983 claims are governed by a three year statute of limitations, it is undisputed that if this action is dismissed against Crofton without prejudice, the statute of limitations will have expired and Plaintiffs will be barred from reasserting any of the instant claims against Crofton in this Court. Thus, Plaintiffs would be significantly prejudiced by the dismissal of the present action; even though the dismissal would be formally without prejudice, as a substantive matter any new action would presumably be time-barred. Although there is corresponding prejudice to Crofton in being served with a complaint "beyond the limitations period for the action," *Zapata*, 502 F.3d at 198, this is especially so where "the defendant had no actual notice of the existence of the complaint until the service period had expired," *id.*, which presumably is not the case here given that the Suffolk County Attorney filed a Notice of Appearance on Crofton's behalf shortly after the Complaint was filed. Moreover, any prejudice to Crofton is diminished by the fact that this case is procedurally in its infancy; discovery has been stayed by Order of Magistrate Judge Boyle pending resolution of the motions to dismiss.

The third factor – whether Crofton had attempted to conceal the defect in service – weighs against granting Plaintiffs' request. Although the County Defendants did not raise ineffective service in their pre-motion conference letter, they did raise it in their motion to dismiss and there is nothing to indicate that they attempted to conceal the fact that Crofton had not been served. On balance, however, and given the general preference for deciding cases on the merits, *see, e.g.*, *DeLuca*, 695 F. Supp. 2d at 67, the Court finds that Plaintiffs are entitled to a discretionary extension under Rule 4(m).

**(d)** ***The 2009 Service on Crofton***

The final issue for the Court to determine is whether the Court should approve, *nunc pro tunc*, Plaintiffs' belated effort to serve Crofton in January and February 2009, or whether it should simply grant Plaintiffs an extension of time to re-serve Crofton. The County Defendants contend that Plaintiffs' January and February 2009 service on Crofton was defective because the return of service failed to contain sufficient factual or descriptive information.

Plaintiffs served Crofton pursuant to Rule 4(e)(1), which authorizes service of process by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). Here, Plaintiffs attempted to effectuate service under N.Y. C.P.L.R. 308(2), which provides that service may be made

> by delivering the summons within the state to a person of suitable age and discretion at the actual place of business . . . of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope [complying with the requirements set forth in that section]. . . .

N.Y. C.P.L.R. 308(2).

In support of their service, Plaintiffs proffer: (1) the declaration of Annemarie Grattan, indicating that she delivered the Complaint to "Crofton's place of business, 3555 Veteran's Memorial Highway, Ronkonkoma, NY and leaving [it] with a person of suitable discretion, Patricia Okler" (Annemarie Grattan Decl., Feb. 11, 2009); and (2) the declaration of William Brooks, indicating that he mailed a copy of the summons and Complaint to Crofton in compliance with the requirements of N.Y. C.P.L.R. 308(2) (William Brooks Decl., Feb. 19, 2009). The County Defendants maintain that Ms. Grattan's declaration is defective under N.Y. C.P.L.R. 306 because it did not include a description of the person to whom service was delivered.

N.Y. C.P.L.R. 306 provides as follows:

> Whenever service is made pursuant to this article by delivery of the summons to an individual, proof of service shall also include, in addition to any other requirement, a description of the person to whom it was so delivered, including, but not limited to, sex, color of skin, hair color, approximate age, approximate weight and height, and other identifying features

N.Y. C.P.L.R. 306(b).

Plaintiffs counter that this provision does not apply to service in federal court. Rather, Plaintiffs assert that Rule 4(l) governs the manner in which a plaintiff must document proof of service in federal court. Rule 4(l) provides in pertinent part as follows:

> (l) Proving Service.
>
> > (1) Affidavit Required. Unless service is waived, proof of service must be made to the court. Except for service by a United States marshal or deputy marshal, proof must be by the server's Affidavit.

. . . .

> ( 3) Validity of Service; Amending Proof.  Failure
> to prove service does not affect the validity of
> service. The court may permit proof of service to be
> amended.

Fed. R. Civ. P. 4(l).

Plaintiffs argue that Rule 4(l) does not require that proof of service include a description of the person served.  While that may be true, as noted above, Rule 4(e)(1) provides that an individual may be served by "*following state law* for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."  Fed. R. Civ. P. 4(e)(1) (emphasis added).  That would seem to indicate that if a plaintiff chooses to serve a defendant under New York law, as Plaintiffs did here, that plaintiff must "follow[]" New York law in its entirety.  Neither side has submitted any relevant case law on the issue.  The Court need not resolve the issue, however, as it has already ruled that Plaintiffs are entitled to an extension to effectuate service.  Accordingly, the Court hereby grants Plaintiffs thirty days leave to re-serve the summons along with the Complaint and file proof of service with the Court.

### e.      *Conclusion as to County Defendants' Motions to Dismiss*

In sum, the County Defendants' motion to dismiss the tenth cause of action, which Plaintiffs concede is not viable, is granted.  Crofton's separate motion to dismiss the Complaint based upon insufficient service is denied.  Plaintiffs shall re-serve Crofton and file proof of service with the Court within thirty days of the date of this Memorandum and Order.

21

**III.**    *The State Defendants' Motion to Dismiss*

The Complaint asserts four claims against the State Defendants. These claims, which are also asserted against either one or both of the County Defendants, are as follows: (1) the first cause of action for a Section 1983 conspiracy against defendants Gelin and Crofton; (2) the eighth cause of action against defendants SBUMC and County DSS based upon an alleged violation of the ADA; (3) the ninth cause of action against defendants SBUMC and County DSS based upon an alleged violation of the Rehabilitation Act; and (4) the tenth cause of action against Gelin, Crofton, and SBUMC for a civil conspiracy under state law. The Court begins with a discussion of Plaintiffs' conspiracy claims, followed by an analysis of Plaintiffs' ADA and Rehabilitation Act claims.

**A.**    *The First Cause of Action – Section 1983 Conspiracy;*
    *The Tenth Cause of Action – State Based Conspiracy*

The first cause of action alleges as follows:

> By acting in concert to facilitate the seizure of Jordanna
> Schweitzer, defendants Gelin and Crofton engaged in a conspiracy
> to violate the civil rights of Jordanna Schweitzer and Victoria
> Schweitzer and hence, violated 42 U.S.C. § 1983.

(Compl. ¶ 89.)

The tenth cause of action, which is entitled "PENDENT STATE CLAIM," alleges as follows:

> By engaging in a common scheme or plan, which resulted in
> removal of infant Jordanna from the custody of plaintiff Victoria,
> defendants [County DSS], Gelin and Crofton engaged in a civil
> conspiracy to violate the civil rights of Victoria solely stemming
> from the plaintiff's mental illness in violation of plaintiff's civil
> rights secured by the Fourth and Fourteenth Amendments to the
> United States Constitution.

(*Id.* ¶ 103.)

        In order to survive a motion to dismiss a Section 1983 conspiracy claim, a plaintiff must allege: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002). Complaints that contain "only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; [d]iffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Id.* at 325 (citation and internal quotation marks omitted). *See also Arar v. Ashcroft*, 585 F.3d 559, 569 (2d Cir. 2009) ("Broad allegations of conspiracy are insufficient; the plaintiff 'must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.'"), (quoting *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (addressing conspiracy claims under 42 U.S.C. § 1985)), *cert. denied*, 130 S. Ct. 3409 (2010).

        Similarly, in order to plead a cause of action for conspiracy under New York law, a plaintiff must allege "the underlying tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." *Fisk v. Letterman*, 424 F. Supp. 2d 670, 677 (S.D.N.Y. 2006) (quoting *Treppel v. Biovail Corp.*, No. 03 Civ. 3002, 2004 WL 2339759, at *19 (S.D.N.Y. Oct. 15, 2004)). *See also Kashi v. Gratsos*, 790 F.2d 1050, 1055 (2d Cir. 1986) (setting forth elements of civil conspiracy under New York law). "'[B]are conclusory allegations[s] of conspiracy [are] usually held

insufficient.'" *Kashelkar v. Bluestone*, 306 F. App'x 690, 693 (2d Cir. 2009) (quoting *Goldstein v. Siegel*, 244 N.Y.S.2d 2d 378, 382 (1st Dep't 1963)).

Here, the sole allegations of conspiracy are that: (1) Gelin "informed" Crofton of her concerns regarding Victoria's mental illness; (2) Gelin "recommended that [County DSS] take steps to prevent Victoria from maintaining the custody and care of Jordanna;" and (3) Crofton "relied" on this information. (Compl. ¶¶ 45- 46, 48.) These allegations, which fail to set forth any facts indicating that Gelin entered into an agreement with Crofton to violate Victoria's rights, are insufficient to state a claim for conspiracy under both Section 1983 and New York law as there are no facts to suggest that Gelin did anything more than relay her opinion to Crofton. Indeed, the lone allegations that Gelin "informed" County DSS of her concerns regarding Victoria's mental state and "recommended" that Victoria not maintain custody cannot plausibly suggest conspiracy given that Gelin, a social worker, was required by the New York State Child Protective Services Act, N.Y. Social Services Law § 413, to report when she had reasonable cause to suspect that a child is being abused or maltreated.[3] Moreover, Plaintiffs' reliance on the pleading standards set forth by the Second Circuit in *Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007), is misplaced as that case has since been reversed by the Supreme Court. *See Iqbal*, 129 S. Ct. 1937. In that regard, Plaintiffs' contention that it is sufficient that "[t]he allegations in the complaint create a reasonable expectation that discovery will reveal evidence of an agreement to remove baby Jordanna from Victoria's custody" (Pls.' Mem. of Law

---

[3] Contrary to Plaintiffs' protestations, the Court is not holding that New York Social Services Law precludes a claim of conspiracy between hospital staff and a caseworker in all cases. Instead, the Court simply finds that the instant Complaint has failed to allege sufficient facts to support such a claim.

in Opp'n 14, Dec. 19, 2008), is without merit given the Supreme Court's recent admonition to the contrary. *See Iqbal*, 129 S. Ct. at 1950 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In sum, the Court finds that Plaintiffs' "[t]hreadbare recitals of the elements of a [conspiracy] cause of action . . . do not suffice." *Iqbal*, 129 S. Ct. at 1949. Accordingly, Plaintiffs' first and tenth causes of action are dismissed.[4]

**B.**     ***The Eighth and Ninth Causes of Action; The ADA and the Rehabilitation Act***

SBUMC moves to dismiss the eighth and ninth causes of action which are brought against defendants SBUMC and County DSS only. The eighth cause of action alleges that County DSS and SBUMC violated Victoria's rights under Title II of the ADA by "making assessments and conclusions of Victoria's fitness to care for Jordanna based on stereotypic views of individuals with mental illness." (Compl. ¶ 99.). The ninth cause of action alleges that County DSS and SBUMC violated § 504 of the Rehabilitation Act, 29 U.S.C. § 794, by "making assessments and conclusions about Victoria's fitness to care for a child based on stereotypic views of individuals who suffer from mental illness." (*Id.* ¶ 101.)

The ADA was enacted to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). It proscribes discrimination against individuals with disabilities in three major areas of public life: (1) employment and hiring (Title I); (2) access to public services, programs,

---

[4] Because the Court has found that the first cause of action fails to state a claim, it is dismissed in its entirety, that is, as against defendant Crofton as well. The tenth cause of action based upon state law conspiracy has already been dismissed as against the County Defendants. *See supra* at 8.

and activities (Title II); and (3) public accommodations (Title III). *Tennessee v. Lane*, 541 U.S. 509, 516-17 (2004). The Plaintiffs in this case rely upon the anti-discrimination provision of Title II, which provides as follows: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act similarly provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

In order to establish a violation under the ADA, Plaintiffs must allege: "(1) they are 'qualified individuals' with a disability; (2) that the defendants are subject to the ADA; and (3) that plaintiffs were denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, by reason of plaintiffs' disabilities." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (citing *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998)). These requirements apply with equal force to Plaintiffs' Rehabilitation Act claims. *Hargrave v. Vermont*, 340 F.3d 27, 35 (2d Cir. 2003). Additionally, to establish a violation under the Rehabilitation Act, a plaintiff must show that the benefit is part of a "program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). *See also Doe*, 148 F.3d at 82.

SBUMC concedes, for purposes of this motion, that Victoria is a qualified individual with a disability.[5] Moreover, SBUMC does not dispute that it receives federal funding, and that as a public entity, it is subject to both the ADA and the Rehabilitation Act. SBUMC argues, however, that Victoria has failed to allege that she was discriminated against because of her disability as that concept is defined under Title II of the ADA and § 504 of the Rehabilitation Act. More specifically, SBUMC contends that Plaintiffs have failed to allege that SBUMC took any adverse action against Victoria within the meaning of the two statutes. Plaintiffs do not address this point in their memorandum. For the reasons that follow, the Court finds that SBUMC is correct.

Victoria's claim is premised upon the allegation that she was denied the benefit of caring for her own child based upon SBUMC's stereotypic views of individuals who suffer from mental illness. However, the adverse action complained of – removing Jordanna – was undertaken by the County Defendants, not SBUMC, and Victoria has failed to allege that she was denied the benefit of any service or program provided *by SBUMC* due to her bipolar disorder. *See Tylicki v. St. Onge*, 297 F. App'x 65, 67 (2d Cir. 2008) (unpublished opinion) (finding that plaintiff failed to allege claim under ADA and Rehabilitation Act where he "failed to allege that he was denied access to [defendant's] programs"); *Cabassa v. Smith*, No. 9:06-CV-852, 2010 WL 786312, at *2 (N.D.N.Y. Mar. 1, 2010) ("Even applying the most liberal reading of Plaintiff's Complaint, it is clear that Plaintiff does not state a proper claim under [the ADA and Rehabilitation Act], insofar as he fails to allege any denial of benefits, exclusion from

---

[5] It is undisputed that the Complaint is devoid of allegations that Jordanna suffers from a disability. Therefore, the Court assumes that the eighth and ninth causes of action are brought on behalf of Victoria only. Plaintiffs do not argue to the contrary.

participation in a service, program or activity, or disparate treatment . . . ."); *Shaw v. N.Y. State Dep't of Corr. Servs.*, No. 09 Civ. 2463, 2010 WL 2143672, at \*3 (S.D.N.Y. May 27, 2010) (dismissing claims under ADA and Rehabilitation Act for failure to allege exclusion from services). The fact that hospital staff questioned Victoria regarding her fitness to parent and then relayed concerns regarding Victoria's mental illness to Crofton, a County DSS caseworker, does not constitute the denial of services of programs provided by SBUMC. Moreover, the Court has already found that Plaintiffs have failed to allege any conspiracy between Gelin and Crofton. Accordingly, the Court finds that Plaintiffs have failed to state a claim against SBUMC under either the ADA or the Rehabilitation Act.

## CONCLUSION

For the foregoing reasons, the motion by the State Defendants to dismiss the Complaint is GRANTED IN ITS ENTIRETY. Thus, all claims are hereby dismissed as against the State Defendants. The County Defendants' motion to dismiss is GRANTED IN PART AND DENIED IN PART. The first and tenth causes of action for conspiracy are hereby dismissed as against the County Defendants. Crofton's motion to dismiss the Complaint for insufficient service is DENIED. Plaintiffs are hereby granted thirty days leave to re-serve the summons and Complaint upon Crofton and file proof of service with the Court. This case is hereby referred to

Magistrate Boyle for the issuance of a discovery schedule.

**SO ORDERED**

Dated: Central Islip, NY
        September 1, 2010

/s_____
Denis R. Hurley,
United States District Judge